No. 24-1244

ORAL ARGUMENT NOT YET SCHEDULED

# *In the United States Court of Appeals for the District of Columbia Circuit*

**DAVID T. MYERS,**
**Appellant/Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE,**
**Appellee/Respondent.**

**ON APPEAL FROM THE UNITED STATES TAX COURT**
**No. 2181-15W**
**Hon. Tamara W. Ashford, Tax Court Judge, Presiding**
_____

**CORRECTED OPENING BRIEF FOR THE APPELLANT DAVID T. MYERS**
_____

Joseph A. DiRuzzo, III
jd@margulisgelfand.com
Daniel M. Lader
dan@margulisgelfand.com

MARGULIS GELFAND
DiRUZZO & LAMBSON
401 East Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
954.615.1676 (o)
954.827.0340 (f)

*Pro Bono Counsel for the Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for the Appellant certifies as follows:

**A.    Parties, Intervenors, and Amici Curiae**

The Parties appearing in the Tax Court were as follows:

- David T. Myers

- Commissioner of Internal Revenue

There were no intervenors below or amici curiae before the Tax Court.

**B.    Ruling Under Review**

The ruling under review is as follows:

On May 24, 2024, the Tax Court (Ashford, *J.*) entered an order of dismissal granting the Government's Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (which the Court *sua sponte* had recharacterized from a Motion for Judgment on the Pleadings), denying Appellant's Motion to Impose Sanctions, and denying Appellant's Motion to Declare 26 U.S.C. § 7443(f) Unconstitutional.

**C.    Related Cases**

This case was previously before this Court as Case No. 18-1003, which resulted in a precedential opinion reversing and remanding, *Myers v. Comm'r of Internal Revenue Serv.*, 928 F.3d 1025 (D.C. Cir. 2019).

i

There is a case pending in the Eleventh Circuit presenting the same issue as in this case, *Wright v. Comm'r of Internal Revenue*, Case No. 24-10563, specifically, whether the for-cause limitation on the President's removal authority over Tax Court judges under 26 U.S.C. § 7443(f) violates Article II of the U.S. Constitution.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES.......................i

TABLE OF CONTENTS ...................................................................................iii

TABLE OF AUTHORITIES................................................................................ v

STATEMENT REGARDING ORAL ARGUMENT................................................ ix

STATEMENT OF SUBJECT MATTER & APPELLATE JURISIDICTION............ 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................. 1

STATEMENT OF THE CASE ............................................................................ 2

    I.    THE ORIGINAL TRIAL PROCEEDINGS .................................................. 2

    II.   THE ORIGINAL APPEAL IN THIS COURT............................................. 3

    III.  THE TRIAL PROCEEDINGS AFTER REMAND ...................................... 3

STANDARD OF REVIEW................................................................................. 6

ARGUMENT.................................................................................................... 7

    I.    BACKGROUND OF CASELAW CONSIDERING THE CONSTITUTIONAL DESIGN.... 7

        A.    The Statutory Design and Judicial Interpretation of the Tax Court.......... 7

            1.    This Court's Decision in *Kuretski*. ......................................... 8

            2.    Post-*Kuretski* Statutory Amendment to Section 7441. ............ 9

            3.    The Tax Court's Decision in *Battat*...................................... 10

            4.    This Court's Decision in *Crim*. .......................................... 11

        B.    The Separation of Powers and Article II of the Constitution................. 12

    II.  THE TAX COURT IS AN EXECUTIVE BODY THAT EXERCISES EXECUTIVE POWERS WHILE RESTRICTING PRESIDENTIAL CONTROL IN VIOLATION OF ARTICLE II.. 17

        A.    The For-Cause Protection of Section 7443(f) is Unconstitutional. ......... 17

        B.    The Tax Court Does Not Fit the Limited Exceptions Permitting Certain Restrictions on the President's Removal Authority Over Principal Officers. ..................................................................................................22

III. THE DECISION BELOW, DISMISSING ON STATUTE OF LIMITATIONS GROUNDS, WAS AN ERROR OF LAW, CONTRARY TO THE APPLICABLE PLEADING STANDARDS, RULES, AND THIS COURT'S PRIOR DECISION REVERSING AND REMANDING THIS CASE ON APPEAL. ........................................................................................ 30

    A.    The Statute of Limitations is a Nonjurisdictional Affirmative Defense that is Subject to Waiver, Forfeiture, and Equitable Tolling. .......................... 31

    B.    The Decision Below Failed to the Properly Apply the Pleading Standards and Tax Court Rules, which Compel the Conclusion that the Government Forfeited or Waived the Statute of Limitations as an Affirmative Defenses. ................................................................................................ 32

        1.    The Government's Answer Did Not Properly Plead the SOL as an Affirmative Defense. ................................................................ 34

        2.    The Government's Pleading Improperly Conflated Issues and Conflicted with this Court's Precedent in the Prior Appeal. ................................... 39

    C.    The Decision Below Failed to Require the Government to Carry its Burden of Proof to Establish the Statute of Limitations as an Affirmative Defense, Applied the Wrong Standard of Review, and Failed to Construe the Pleading to Do Justice. ................................................................ 40

CONCLUSION ........................................................................................ 48

CERTIFICATION OF COMPLIANCE ................................................. 50

CERTIFICATE OF SERVICE ................................................................ 50

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Commissioner*, 85 T.C. 535 (1985) ..................................................41

*Battat v. Comm'r*, 148 T.C. 32 (2017) ...........................................7, 10, 11

*Bruce v. Comm'r*, T.C. Memo. 2014-178 (2014), *aff'd*, 608 F. App'x 268 (5th Cir. 2015) ...........................................................................................34, 38

*Bull S.A. v. Comer*, 55 F.3d 678 (D.C. Cir. 1995)....................................45, 46

*Byers v. Comm'r*, 740 F.3d 668 (D.C. Cir. 2014) ..........................................6

*Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993) ........................47

*Collins v. Mnuchin*, 896 F.3d 640 (5th Cir. 2018), *on reh'g en banc*, 938 F.3d 553 (5th Cir. 2019), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 594 U.S. 220 (2021) ......................................................... 16, 18, 19

*Collins v. Yellen*, 594 U.S. 220 (2021) ..................................... 20, 21, 22, 27

*Conley v. Gibson*, 355 U.S. 41 (1957) .........................................................43

*Crim v. Comm'r of Internal Revenue*, 66 F.4th 999 (D.C. Cir. 2023).............................. ...................................................................7, 11, 12, 17, 21, 27, 28

*Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363 (D.C. Cir. 1998)...........45

*Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442 (D.C. Cir. 1994) ................36

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................6, 44

*Fazi v. Comm'r*, 105 T.C. 436 (1995) ....................................................35, 41

*Ford v. Comm'r*, T.C. Memo. 2005-18 (2005) ...........................................33

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) .................... ....................................................... 14, 15, 16, 18, 19, 22, 28, 29

*Freytag v. Comm'r*, 501 U.S. 868 (1991).......................................................8

*Ho Ching Cheng v. Comm'r*, T.C. Memo. 2006-74 (T.C. 2006)..................................38

v

*I.N.S. v. Chadha*, 462 U.S. 919 (1983) ........................................................... 13

*John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) .................. 32

*Kuretski v. Comm'r*, 755 F.3d 929 (D.C. Cir. 2014) ........................... 7, 8, 9, 17

*Long v. Howard Univ.*, 550 F.3d 21 (D.C. Cir. 2008) ..................................... 36

*Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237 (2018) ....................................... 30

*Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) ........... 32

*Martin v. Hunter's Lessee*, 14 U.S. 304 (1816) ............................................... 12

*McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006) ..................................... 43

*McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) ................................................. 30

*Mistretta v. United States*, 488 U.S. 361 (1989) ............................................. 28

*Myers v. Comm'r of Internal Revenue Serv.*, 928 F.3d 1025 (D.C. Cir. 2019) ...................

.................................................................................................. 3, 31, 35, 37, 40

*Myers v. Comm'r of Internal Revenue*, 148 T.C. 438 (2017), *rev'd and remanded sub nom.*

*Myers v. Comm'r of Internal Revenue Serv.*, 928 F.3d 1025 (D.C. Cir. 2019) ............. 3

*Myers v. United States*, 272 U.S. 52 (1926) .................................................... 20

*Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710 (2019) ................................... 32

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d

147 (2d Cir. 2003) .................................................................................. 43, 46

*PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75 (D.C. Cir. 2018) ......................

.................................................................................... 15, 24, 25, 26, 27, 28, 29

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995) ..................................... 16

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) ..................... 37

*Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020) ...................................

.................................................................. 12, 13, 16, 17, 20, 21, 24, 29

*Smith-Haynie v. D.C.*, 155 F.3d 575 (D.C. Cir. 1998) ................................. 32, 35

*United States v. Arthrex, Inc.*, 594 U.S. 1 (2021) .......................................... 20, 21, 27, 29

*Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332
    (D.C. Cir. 2018) ............................................................................................ 6

**Statutes**

5 U.S.C. § 1201 .......................................................................................................23

5 U.S.C. § 1203(a) ...................................................................................................23

26 U.S.C. § 7441 ................................................................................... 9, 10, 28, 29

26 U.S.C. § 7443(b) ................................................................................................ 10

26 U.S.C. § 7443(e) ................................................................................................ 25

26 U.S.C. § 7443(f) ................................................................................... 10, 17, 19

26 U.S.C. § 7444(b) ................................................................................................ 25

26 U.S.C. § 7444(c) ................................................................................................ 25

26 U.S.C. § 7456 ...................................................................................................... 7

26 U.S.C. § 7482(a)(1) ............................................................................................. 1

26 U.S.C. § 7482(b)(1)(A) ....................................................................................... 1

26 U.S.C. § 7483 ....................................................................................................... 1

26 U.S.C. § 7623(b)(4) ........................................................................................ 1, 34

Pub. L. 91–172, 83 Stat. 487 .................................................................................. 7

**Other Authorities**

1 Annals of Cong. (1789) (J. Madison) ............................................................ 20, 21

The Federalist No. 51 (J. Cooke ed. 1961) (J. Madison) ........................................ 13

The Federalist No. 70 (A. Hamilton) ...................................................................... 14

**Rules**

Fed. R. App. P. 13 ..................................................................................................... 1

Fed. R. Civ. P. 8(c)(1) ............................................................................................ 36

Fed. R. Civ. P. 8(e) .................................................................. 44

Tax Ct. R. 31(d) ...................................................................... 44

Tax Ct. R. 32(b) ...................................................................... 39

Tax Ct. R. 39 .............................................................. 33, 35, 47

Tax Ct. R. 142(a)(1) ................................................................ 41

**Constitutional Provisions**

U.S. Const. art. II, § 3 ................................................ 13, 14, 17, 21, 29

## STATEMENT REGARDING ORAL ARGUMENT

Because of the complexity and the significance of the issues involved, Appellant respectfully requests oral argument, which he believes would assist this Court in the determination of the issues of first impression presented on appeal.

**STATEMENT OF SUBJECT MATTER & APPELLATE JURISIDICTION**

The Tax Court had jurisdiction under 26 U.S.C. § 7623(b)(4). This Court has jurisdiction pursuant to 26 U.S.C. § 7482(a)(1).[1] Myers timely noticed his appeal (JA-091)[2] under 26 U.S.C. § 7483 and Fed. R. App. P. 13.

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1.      Whether the Tax Court erred as a matter of law in finding that the for-cause limitation on the President's removal authority over Tax Court judges under 26 U.S.C. § 7443(f) does not violate Article II of the U.S. Constitution.

2.      Whether the Tax Court's *sua sponte* recharacterization of the Government's Motion for Judgment on the Pleadings to a Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted (the "Motion") and subsequent granting of the Motion on statute of limitations grounds requires reversal and remand in light of, *inter alia*, the following:

- Both the Government's answer and the Motion failed to mention the term "statute of limitations" and failed to specifically identify any applicable statute of limitations;

- In response to Appellant's allegation in his *pro se* Tax Court petition that the

---

[1] Venue is proper in this Court under 26 U.S.C. § 7482(b)(1) (flush language).

[2] "Doc. #" refers to the docket entries before the Tax Court; "JA" refers to the Joint Appendix.

Government had concealed the true facts of his worker status, pleading estoppel in the event of the Government's attempt to obtain dismissal based on, *inter alia*, asserting the expiration of the statute of limitations, the Government's answer merely denied the allegation; and

- In his counseled reply to the Government's answer, which stated that the petition was not timely filed, Appellant likewise denied the allegation.

## STATEMENT OF THE CASE

### I.    THE ORIGINAL TRIAL PROCEEDINGS

In January 2015, Myers filed his whistleblower petition with the Tax Court. JA-019. The Government moved to dismiss Appellant's petition for lack of jurisdiction on the grounds that the petition was not timely filed pursuant to 26 U.S.C. § 7623(b)(4). Doc. #4.

The Tax Court ordered additional briefing on jurisdiction (Doc. #14). In response, Appellant (proceeding *pro se*), provided various arguments in support of his assertion that equitable estoppel should apply and the Tax Court should deem his petition timely under the circumstances. *See generally* Doc. #16.

Ultimately, the Tax Court issued its opinion (Doc. #56) and held as follows:

We sympathize with petitioner, particularly in the light of the unhelpfully sparse contents of the Whistleblower Office's letters. Nonetheless, on the basis of the foregoing, we find that petitioner failed

2

to timely file his petition with this Court. As a result, we will dismiss this case for lack of jurisdiction.

*Myers v. Comm'r of Internal Revenue*, 148 T.C. 438, 449 (2017), *rev'd and remanded sub nom. Myers v. Comm'r of Internal Revenue Serv.*, 928 F.3d 1025 (D.C. Cir. 2019). The Tax Court's order of dismissal for lack of jurisdiction followed (Doc. #57) as did Appellant's *pro se* motion for reconsideration (Doc. #58), which the Tax Court denied (Doc. #59). Appellant timely appealed (Doc. # 60) and the prior appellate proceedings followed.

## II.   THE ORIGINAL APPEAL IN THIS COURT

After the Tax Court dismissed Appellant's petition on the grounds that it lacked jurisdiction due to Appellant's failure to meet the 30-day deadline under Section 7623(b)(4), this Court went on to "hold that § 7623(b)(4) is not jurisdictional" and that "the filing period in § 7623(b)(4) is subject to equitable tolling." *Myers v. Comm'r of Internal Revenue Serv.*, 928 F.3d 1025, 1036, 1037 (D.C. Cir. 2019).

Accordingly, "[this Court] remand[ed] the case to the Tax Court to consider in the first instance whether equitable tolling is appropriate in this case." *Id.* at 1037.

## III.   THE TRIAL PROCEEDINGS AFTER REMAND

On remand, while Appellant was represented by counsel, the Government filed its Answer, in which it stated the following in further answering the petition:

3

(h) On appeal, the United States Appeals Court for the D.C. Circuit affirmed the Tax Court's holding that the petition was not timely. 928 F.3d 1025, 1032.

(i) Because the petition was not timely filed, petitioner fails to state a justiciable cause of action and otherwise does not meet the statutory conditions for relief under 26 U.S.C. § 7623.

JA-079. Appellant replied to those assertions as follows:

h. Such is a statement of law to which no reply is required. To the extent a reply is required such is denied. The Petitioner also disagrees with the Respondent's gloss on the D.C. Circuit's opinion.
i. Denied.

JA-083.

The Government moved for judgment on the pleadings (Doc. #74), concluding

[t]he D.C. Circuit issued a mandate to this Court to determine whether equitable tolling applies in this case. Equitable tolling is an affirmative defense that must be set forth in a party's pleading. T.C. Rule 39. Due to petitioner's failure to raise the issue in his Reply and his failure to allege facts to support an affirmative defense regarding the timeliness of the petition, this Court should find that equitable tolling does not apply in this case and enter a decision in favor of respondent.

Doc. #74 at 8.

On January 19, 2021, Appellant filed an opposition (Doc. # 80) and the same day filed a motion for sanctions pursuant to Tax Court Rule 1 and Fed. R. Civ. P. 11 (Doc. #81). The Government did not reply to Appellant's opposition nor respond to Appellant's motion for sanctions. On October 7, 2022, Appellant filed a motion for telephonic status conference (Doc. #84). On July 18, 2023, Appellant filed a renewed

4

motion for telephonic status conference (Doc. #85). On July 20, 2023, Appellant filed a motion to declare 26 U.S.C. § 7443(f) unconstitutional based on Article II of the U.S. Constitution (Doc. #86). The Government did not respond to that motion.

On May 21, 2024, the Tax Court denied both motions for telephonic status conference (Doc. #87; Doc. #88) and, the same day, issued an order recharacterizing the Government's motion for judgement on the pleadings as a motion to dismiss for failure to state a claim upon which relief can be granted. Doc. #89; JA-085. On May 24, 2024, the Tax Court issued an order of dismissal (Doc. #90) denying Appellant's constitutional motion, granting the Government's motion to dismiss (as the Tax Court had *sua sponte* recharacterized it) and denying Appellant's motion for sanctions. JA-087.

Appellant timely appealed (Doc. #91; JA-091) and the instant case followed.

## SUMMARY OF ARGUMENT

The Tax Court exercises executive power under our constitutional design but unaccountable to the President in the manner that Article II commands. Because the traditional, multi-member body safeguards that have historically been upheld in lieu of at-will presidential removal authority are absent from the statutory design, the removal restriction of Section 7443(f) is unconstitutional and must be stricken.

And reversal is required because the Government failed to properly plead the statute of limitations ("SOL") as an affirmative defense. Thus, Appellant was under no obligation to plead equitable tolling and dismissal was error as a matter of law.

Even, *arguendo*, *if* the Answer could be construed to have pleaded the SOL it necessarily was required to do so as well for Petitioner. This is especially so given that the petition was filed *pro se* and the failure to do so violated the requirement to construe pleadings to do justice and, specifically, to construe *pro se* pleadings liberally.

## STANDARD OF REVIEW

This Court "review[s] decisions of the Tax Court in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury[, therefore,] apply[ing] *de novo* review to the Tax Court's determinations of law." *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014).

"The allegations of the [petition] are generally taken as true for purposes of a motion to dismiss" and this Court "review[s] the [trial] court's dismissal of a [petition] for failure to state a claim *de novo*." *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 338–39 (D.C. Cir. 2018) (cleaned up).

And *pro se* pleadings are held to a "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## ARGUMENT

## I.   BACKGROUND OF CASELAW CONSIDERING THE CONSTITUTIONAL DESIGN.

Both the Tax Court and this Court have considered whether the President's removal power under Section 7443(f) is unconstitutional based on allegations of impermissible *interbranch* encroachment violating the separation of powers. *See Battat v. Comm'r*, 148 T.C. 32 (2017); *Kuretski v. Comm'r*, 755 F.3d 929 (D.C. Cir. 2014); *Crim v. Comm'r of Internal Revenue*, 66 F.4th 999 (D.C. Cir. 2023). Both Courts held in the negative – but based on entirely different (and incompatible) reasoning.

The Tax Court below upheld *Battat*, and also held that Section 7443(f) is not unconstitutional for violating Article II. JA-089. This Court has already found that the Tax Court is situated in Article II and exercises Executive power under our tripartite governmental design but has not considered whether Section 7443(f) violates Article II as argued below. Accordingly, that question is now squarely presented. And this Court should hold that Section 7443(f) cannot stand.

### A.   The Statutory Design and Judicial Interpretation of the Tax Court.

Prior to 1969, the Tax Court was codified as an independent executive agency until the Tax Reform Act of 1969 removed that explicit designation, *see* Pub. L. 91–172, 83 Stat. 487.  Since then, the Tax Court's precise nature has been subject to judicial interpretation. However, the court's powers were subsequently expanded and codified as well, *see generally, e.g.,* 26 U.S.C. § 7456.

### 1. This Court's Decision in *Kuretski.*

In *Kuretski*, this Court acknowledged that in *Freytag v. Comm'r*, 501 U.S. 868 (1991), the Supreme Court "observed that the Tax Court exercises a portion of the judicial power of the United States." 755 F.3d at 941 (cleaned up). This Court further explained that the "*Freytag* Court clarified that non-Article III tribunals exercise the judicial power of the United States, such that the judicial power of the United States is not limited to the judicial power defined under Article III." *Id.* (cleaned up). Thus, the "Tax Court is an adjudicative body" and "[a] tribunal constitutes a 'legislative court' if its power is not conferred by the third article of the Constitution, but by Congress in the execution of other provisions of that instrument." *Id.* at 941, 942 (cleaned up).

But "[t]he Tax Court's status as an Article I legislative court, [in and of itself,] does not mean that its judges exercise 'legislative power' under Article I." *Id.* at 943. Therefore, *Freytag* "explained that Tax Court judges do not exercise the 'judicial power of the United States' pursuant to Article III [and] also explained that Congress's establishment of the Tax Court as an Article I legislative court did not transfer the Tax Court to the Legislative Branch." *Id.* This Court, therefore explained,

> [t]he Kuretskis have failed to persuade us that Tax Court judges exercise their authority as part of any branch other than the Executive. Consequently, if a President were someday to exercise the authority under 26 U.S.C. § 7443(f) to remove a Tax Court judge for cause, the

removal would be entirely consistent with separation-of-powers principles.

*Id.* at 939. That is so, this Court held plainly, because "[e]ven if the 1969 Act transformed the Tax Court into an Article I legislative court, it did not thereby transfer the Tax Court to the Legislative Branch." *Id.* at 942. "It follows that the Tax Court exercises its authority as part of the Executive Branch." *Id.* at 943.

Ultimately, *Kuretski* concluded, because "the Tax Court, in our view, exercises Executive authority as part of the Executive Branch[, p]residential removal of a Tax Court judge thus would constitute an intra—not inter—branch removal." *Id.* at 932. Consequently, there was no constitutional infirmity with "presidential removal of Tax Court judges" because "the Tax Court exercises its authority as part of the Executive Branch." *Id.* at 943.

## 2. Post-*Kuretski* Statutory Amendment to Section 7441.

After *Kuretski*, Congress amended the Internal Revenue Code to state, "[t]he Tax Court *is not an agency of, and shall be independent of, the executive branch of the Government.*" 26 U.S.C. § 7441 (emphasis added).

Extant law provides, Congress has

established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court. The members of the Tax Court shall be the chief judge and the judges of the Tax Court. The Tax Court is not an agency of, and shall be independent of, the executive branch of the Government.

9

*Id.*

However, Section 7443's appointment and removal provisions were not amended. those provisions still state that "appoint[ment] by the President, by and with the advice and consent of the Senate," 26 U.S.C. § 7443(b), "[j]udges of the Tax Court may be removed by the President, after notice and opportunity for public hearing, for inefficiency, neglect of duty, or malfeasance in office, but for no other cause." 26 U.S.C. § 7443(f).

### 3.    The Tax Court's Decision in *Battat*.

The Tax Court considered a similar *interbranch*-based challenge as in *Kuretski*, *after* the statutory amendment, and acknowledged,

> [i]n the explanation of the change contained in the report of the Senate Finance Committee, the Committee said it was—
>
>> concerned that statements in *Kuretski v. Commissioner* may lead the public to question the independence of the Tax Court, especially in relation to the Department of Treasury or the Internal Revenue Service. The Committee wishes to remove any uncertainty caused by *Kuretski v. Commissioner*, and to ensure that there is no appearance of institutional bias.

*Battat*, 148 T.C. at 49 (citation omitted).

Diverging with this Court's reasoning, *Battat* held that, "[w]hile the Tax Court exercises a portion of the judicial power of the United States, it has jurisdiction to

10

adjudicate only public rights disputes, and thus does not exercise that portion of the judicial power that is reserved for Article III judges." *Id.* at 53. Ultimately, *Battat* "conclude[d] that *regardless of the branch location of the Tax Court*, provisions authorizing removal of Tax Court Judges are constitutional." *Id.* at 52 (emphasis added).

### 4.    This Court's Decision in *Crim*.

In *Crim*, this Court considered substantially similar arguments presented in *Kuretski* (i.e., interbranch Separation of Powers), but (like *Battat*) *after* the statutory amendment to Section 7441. This Court explained that Section 7441 "describe[s] the Tax Court's functional independence rather than its constitutional status," and "in 1969, Congress, in departing from the prior language describing the Tax Court as an executive 'agency,' aimed to emphasize the Tax Court's independence as a 'court' reviewing the actions of the IRS." *Crim*, 66 F.4th at 1001 (cleaned up). Finally, with the 2015 amendment, "Congress sought only to ensure that there is no appearance of institutional bias when the Tax Court adjudicates disputes between the IRS and taxpayers." *Id.* (cleaned up).

Thus, the *Crim* court rejected the *interbranch* arguments "[b]ecause the Tax Court exercises its authority as part of the Executive Branch" even after the statutory amendment. *Id.* at 1000 (cleaned up). But Judge Walker (dissenting from the majority with respect to Section 6700 penalties only) explained: "If the Tax Court *were* outside

11

of the executive branch, the President's power to remove its judges would be problematic. But because the Tax Court is inside the executive branch, there is no such problem." *Id.* at 1006 (Walker, *J.*, dissenting) (emphasis in original). Judge Walker emphasized that the 2015 amendments to Section 7441 "did not change the Tax Court's position within our system of government. So the Tax Court *remains part of the executive branch*, just as it was before the amendment." *Id.* (Walker, *J.*, dissenting) (emphasis added).

Judge Walker then crystalized the issue presented in this appeal: "Of course, tax judges cannot be truly and fully 'independent' because 'lesser officers must remain accountable to the President, whose authority they wield.'" *Id.* at 1007 (Walker, *J.*, dissenting) (quoting *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020)). And, illustrating that *Crim* did not consider the question presented herein, Judge Walker stated, "I express no opinion about whether tax judges' removal protection is constitutional. *Cf.* [*Seila Law*, *supra*]." *Id.* (Walker, *J.*, dissenting).

## B.    The Separation of Powers and Article II of the Constitution.

Early in our Republic, the Supreme Court explained that "[t]he object of the constitution was to establish three great departments of government; the legislative, the executive, and the judicial departments." *Martin v. Hunter's Lessee*, 14 U.S. 304, 329 (1816). And pursuant to that constitutional design, Article II of the

Constitutional vests the Executive power in and requires that the President "shall take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3.

Clearly, "[t]he principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the documents that they drafted in Philadelphia in the summer of 1787." *I.N.S. v. Chadha*, 462 U.S. 919, 946 (1983) (cleaned up). "The very structure of the articles delegating and separating powers under Arts. I, II, and III exemplify the concept of separation of powers[.]" *Id.*

> The Framers recognized that, in the long term, structural protections against abuse of power were critical to preserving liberty. Their solution to governmental power and its perils was simple: divide it. To prevent the gradual concentration of power in the same hands, they enabled ambition to counteract ambition at every turn. At the highest level, they "split the atom of sovereignty" itself into one Federal Government and the States. They then divided the powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial.

*Seila Law*, 591 U.S. at 223 (cleaned up, quoting, *inter alia*, The Federalist No. 51, p. 349 (J. Cooke ed. 1961) (J. Madison)).

> The Executive Branch is a stark departure from all this division. The Framers viewed the legislative power as a special threat to individual liberty, so they divided that power to ensure that differences of opinion and the jarrings of parties would promote deliberation and circumspection and check excesses in the majority. By contrast, the Framers thought it necessary to secure the authority of the Executive so that he could carry out his unique responsibilities. As Madison put it, while the weight of the legislative authority requires that it should be

divided, the weakness of the executive may require, on the other hand, that it should be fortified.

*Id.* (cleaned up, quoting repeatedly, The Federalist No. 70 (A. Hamilton)).

The entirety of Article II power is vested in the President, "[t]o justify and check *that* authority—unique in our constitutional structure—the Framers made the President the most democratic and politically accountable official in Government." *Id.* at 224 (emphasis in original). Consequently, "the President cannot delegate ultimate responsibility or the active obligation to supervise that goes with it, because Article II makes a single President responsible for the actions of the Executive Branch." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 496–97 (2010) (cleaned up). In the language of the Constitution, "[t]he President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Id.* at 484 (quoting U.S. Const. art. II, § 3).

This understanding of Executive power has been paramount to our history:

The landmark case of *Myers v. United States* reaffirmed the principle that Article II confers on the President "the general administrative control of those executing the laws." It is *his* responsibility to take care that the laws be faithfully executed. The buck stops with the President, in Harry Truman's famous phrase.

*Id.* at 492-93 (cleaned up). "[O]ur Constitution 'was adopted to enable the people to govern themselves, through their elected leaders,' and the Constitution 'requires that a President chosen by the entire Nation oversee the execution of the laws.'" *PHH Corp.*

*v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 167–68 (D.C. Cir. 2018) (Kavanaugh, *J.*, dissenting) (quoting *Free Enter. Fund* 561 U.S. at 499).

The People rely on the President to execute the law in the manner that best represents the will of the electorate.

> The Constitution that makes the President accountable to the people for executing the laws also gives him the power to do so. That power includes, as a general matter, the authority to remove those who assist him in carrying out his duties. Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else.

*Id.* at 513–14 (Kavanaugh, *J.*, dissenting).

If the people cannot determine who the elected officials are that make important decisions that impact their lives, the right to vote loses meaning.

> The diffusion of power carries with it a diffusion of accountability. The people do not vote for the "Officers of the United States." They instead look to the President to guide the assistants or deputies ... subject to his superintendence. Without a clear and effective chain of command, the public cannot determine on whom the blame or the punishment of a pernicious measure, or series of pernicious measures ought really to fall. That is why the Framers sought to ensure that those who are employed in the execution of the law will be in their proper situation, and the chain of dependence be preserved; the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community.

*Free Enter. Fund.*, 561 U.S. at 497-98 (cleaned up).  And "the doctrine of separation of powers is a *structural safeguard* rather than a remedy to be applied only when specific harm, or risk of specific harm, can be identified." *Plaut v. Spendthrift Farm, Inc.*, 514

U.S. 211, 239 (1995) (emphasis in original). "'[S]tanding does not require precise proof of what the [agency's] policies might have been' had the agency's structure met constitutional requirements." *Collins v. Mnuchin*, 896 F.3d 640, 657 (5th Cir. 2018), *on reh'g en banc*, 938 F.3d 553 (5th Cir. 2019), *aff'd in part, vacated in part, rev'd in part sub nom. Collins v. Yellen*, 594 U.S. 220 (2021) (quoting *Free Enter. Fund*, 561 U.S. at 512 n. 12). Indeed, the Supreme Court recently rejected the suggestion that prejudice is required:

> Our precedents say otherwise. We have held that a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a "counterfactual world" in which the Government had acted with constitutional authority. In the specific context of the President's removal power, we have found it sufficient that the challenger sustains injury from an executive act that allegedly exceeds the official's authority.

*Seila Law*, 591 U.S. at 211 (cleaned up).

* * *

Despite that Tax Court judges exercise Executive power under Article II, Section 7443(f) prevents ultimate accountability traceable to the President. And, because no other statutory provisions provide sufficient oversight and control that can possibly be construed as consistent with historical exceptions to at-will presidential removal, the for-cause removal protection violates Article II's required Presidential control, is unconstitutional, and requires judicial severance from Section 7443(f).

II.     **THE TAX COURT IS AN EXECUTIVE BODY THAT EXERCISES EXECUTIVE POWERS WHILE RESTRICTING PRESIDENTIAL CONTROL IN VIOLATION OF ARTICLE II.**

A.     **The For-Cause Protection of Section 7443(f) is Unconstitutional.**

Because the Tax Court is an Executive entity, Article II commands the President to ensure "that the Laws be faithfully executed" by the Tax Court. U.S. Const. art. II, § 3. However, Tax Court judges are immune from removal by the President except "for inefficiency, neglect of duty, or malfeasance in office[.]" 26 U.S.C. § 7443(f). Though not presented with the contention that such restriction violates Article II in *Crim*, Judge Walker presciently observed that "tax judges cannot be truly and fully 'independent' because 'lesser officers must remain accountable to the President, whose authority they wield.' I express no opinion about whether tax judges' removal protection is constitutional." *Crim*, 66 F.4th at 1007 (Walker, *J.* dissenting) (quoting *Seila Law*, 591 U.S. at 213).

Cause for concern is well founded.

As an Executive entity, "[t]he Tax Court is in the business of interpreting and applying the internal revenue laws[.]" *Kuretski*, 755 F.3d at 943. Because "Congress's amendment [did] not change the Tax Court's powers[, which] are, and have always been, executive[,]" *Crim*, 66 F.4th at 1007 (Walker, *J.* dissenting), Section 7443(f)'s for-cause limitation violates the President's powers required by Article II.

Forsooth, the Supreme Court's recognition that a similar for-cause removal limitation for the Public Company Accounting Oversight Board ("PCAOB") is unconstitutional applies with full force here:

> Neither the President, nor anyone directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over the [Tax Court judges]. The President is stripped of the power our precedents have preserved, and his ability to execute the laws—by holding his subordinates accountable for their conduct—is impaired.

*Free Enter. Fund*, 561 U.S. at 493.

The purpose of such unified control over executive power in the President is to provide the primary means of enforcing accountability on those lower executive branch officials who exercise it.

> Congress has plenary control over the salary, duties, and even existence of executive offices. Only Presidential oversight can counter its influence. That is why the Constitution vests certain powers in the President that the Legislature has no right to diminish or modify. The Framers created a structure in which a dependence on the people would be the primary control on the government.... A key constitutional means vested in the President—perhaps *the* key means—was the power of appointing, overseeing, and controlling those who execute the laws.

*Id.* at 500-01 (cleaned up).

"[A]bsent effective oversight tools, the Chief Executive could lose control over the Executive Branch." *Collins*, 896 F.3d at 663 (cleaned up) (citing *Free Enter. Fund*, 561 U.S. at 499). Section 7443(f)'s for cause removal protection makes Tax Court

judges entirely unaccountable to the President – and, therefore, the people – leaving the President virtually no tools at his disposal to carry out Article II's obligations.

The for-cause limitation in *Free Enterprise* restricted the President's ability to control through removal to instances of "inefficiency, neglect of duty, or malfeasance in office. Thus, to the Court, *none of those Commissioners were subject to the President's direct control*" in violation of Article II." *Collins*, 896 F.3d at 663 (cleaned up, emphasis added, citing *Free Enter. Fund*, 561 U.S. at 485). And Section 7443 imposes an identical limitation on the President, confining removal power over Tax Court judges for "inefficiency, neglect of duty, or malfeasance in office, but for no other cause." 26 U.S.C. § 7443(f).

But, in order to uphold the constitutional mandate of Article II, "to maintain 'adequate control' over his subordinates, the President must retain sticks that he can use to demand accountability—including the power to remove. As the *Free Enterprise* Court made clear, Congress cannot transform the President into a 'cajoler-in-chief' who can only offer carrots." *Collins*, 896 F.3d at 664 (footnotes omitted, quoting *Free Enter. Fund*, 561 U.S. at 502). Tax Court judges operate virtually free of any presidential oversight and without accountability to the people as they are unelected executive branch officers removable by the President for good cause only upon an official finding of explicitly limited and severe circumstances.

This violates the well-settled understanding that executive officials must be accountable to the President, and

> because the President, unlike agency officials, is elected, this control is essential to subject Executive Branch actions to a degree of electoral accountability. At-will removal ensures that "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community."

*Collins v. Yellen*, 594 U.S. 220, 252 (2021) (cleaned up, quoting 1 Annals of Cong. 499 (1789) (J. Madison)).

Indeed,

> [t]he President's removal power serves vital purposes even when the officer subject to removal is not the head of one of the largest and most powerful agencies. The removal power helps the President maintain a degree of control over the subordinates he needs to carry out his duties as the head of the Executive Branch, and it works to ensure that these subordinates serve the people effectively and in accordance with the policies that the people presumably elected the President to promote.

*Id.* (citing as examples *Seila Law*, 591 U.S. at 212-13; *Free Enter. Fund*, 561 U.S. at 501-02; *Myers v. United States*, 272 U.S. 52, 131 (1926)).

In other words, "the President can neither oversee the [Tax Court judges] himself nor attribute the [Tax Court judges'] failings to those whom he *can* oversee. [Tax Court judges] accordingly exercise power that conflicts with the design of [Article II] to preserve political accountability." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (cleaned up, emphasis in original).

Appellate review by Article III courts makes no difference if "the Tax Court exercises its authority as part of the Executive Branch," *Crim*, 66 F.4th at 1000 (cleaned up), because "[r]eview outside Article II... cannot provide the necessary supervision." *Arthrex*, 594 U.S. at 17. Tax Court judges are "exercising executive power and must remain 'dependent upon the President.'" *Id.* (quoting 1 Annals of Cong., at 611–612 (J. Madison). Under the extant statutory scheme, they do not.

Instead, the buck stops with Tax Court judges, contrary to Article II:

The President must be able to remove not just officers who disobey his commands but also those he finds negligent and inefficient, those who exercise their discretion in a way that is not intelligent or wise, those who have different views of policy, those who come from a competing political party who is dead set against the President's agenda, and those in whom he has simply lost confidence.

*Collins*, 594 U.S. at 256 (cleaned up).

Simply put, Section 7443(f) violates the President's undivided duty to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3. Moreover, Appellant need not allege nor prove harm because in *Seila Law* the Supreme Court reaffirmed its "precedents ... that a litigant challenging governmental action as void on the basis of the separation of powers is not required to prove that the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority." 591 U.S. at 211 (citation omitted).

21

B.     **The Tax Court Does Not Fit the Limited Exceptions Permitting Certain Restrictions on the President's Removal Authority Over Principal Officers.**

The Supreme Court's precedents have allowed Congress to create independent agencies within the executive branch, but the High Court been clear that strict limitations apply.

For instance, "[w]hen Congress vests the appointment of inferior officers in the heads of Departments[,] it may limit and restrict the power of removal as it deems best for the public interest." *Free Enter. Fund,* 561 U.S. at 494 (cleaned up). However, such atypical restrictions have only been allowed when "an officer directly responsible to the President and through [whom] the President could act, [had] several means of supervising or controlling" the appointee. *Id.* at 495 (cleaned up).

In the context of executive bodies directed by muti-member principal officers (typically referred to, though not technically defined as, independent agencies[3]), Congress has upheld for-cause removal restrictions *conditioned on other protections* to preserve presidential control. For instance, Congress created the Merit Systems Protection Board ("MSPB") with the typical independent-agency structural safeguards in place. The multi-member board is statutorily required to be bipartisan and the

---

[3] *See Collins*, 594 U.S. at 249 ("the term 'independent' does not necessarily connote independence from Presidential control").

President has a powerful tool to align the board with the administration's policies by appointment of the chairperson. *See* 5 U.S.C. § 1201 ("The Merit Systems Protection Board is composed of 3 members appointed by the President, by and with the advice and consent of the Senate, not more than 2 of whom may be adherents of the same political party."); 5 U.S.C. § 1203(a) ("The President shall from time to time appoint, by and with the advice and consent of the Senate, one of the members of the Merit Systems Protection Board as the Chairman of the Board.").

But Tax Court judges exercise unreviewable executive branch powers without *any* safeguards typical of independent executive agencies – e.g., dispersing power among muti-member heads, mandating bipartisanship, and giving a sitting President the authority to appoint the chairperson to align policy with the administration (as with the MSPB). Rather, it operates under its own, constitutionally deficient independence, without meaningful control by the President.

As now-Justice Kavanaugh explained, when Congress *validly* imposes for-cause removal restrictions, as opposed to the Tax Court, which operates completely unaccountable to the President, "[n]othing comparable happens in traditional multi-member independent agencies. Rather, the traditional multi-member structure ordinarily allows the current President to exercise some influence over the agency through Presidential appointment. That is because the President may designate agency

23

chairs and may remove agency chairs at will from their positions as chairs." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 189 (D.C. Cir. 2018) (Kavanaugh, *J.*, dissenting), *abrogated by Seila Law*, 591 U.S. 197 (considering the Consumer Financial Protection Bureau ("CFPB") and "hold[ing] that the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." *Seila Law*, 591 U.S. at 213).[4]

And these Presidential tools are meaningful:

The power to designate and remove chairs at will is important because, by statute, the chairs of multimember agencies have been granted budget, personnel, and agenda control....

The chair of a multimember agency usually holds the position of chair—but not as a member of the agency—at the will of the President. After removal of an existing chair, the President can then appoint a new chair with preferences closer to his. *The ability of the President to retain policy influence through the selection of the chair is important* because ... the chair of a multimember agency is ordinarily its most dominant figure. While there is room for debate, *it is clear that the ability to appoint the head of an independent agency allows the President to retain some control over that agency's activities.* An appointed chair will align with the President for multiple reasons....

By exercising their power to appoint chairs of the major multi-member independent agencies, Presidents may gain some control over the direction of those agencies within days of taking office at the start of their first terms. For example, President Trump replaced the chairs of the

---

[4] *See also PHH Corp.*, 881 F.3d at 189 n. 15 (Kavanaugh, *J.*, dissenting) ("For example, the President unilaterally designates (and may unilaterally remove at will from the position as chair) the chairs of the following agencies..." (listing over a dozen examples).

FTC, FCC, SEC, and NLRB within one week of taking office in January 2017. President Obama did the same by March 2009.

*PHH Corp.*, 881 F.3d at 189-90 (Kavanaugh, *J.*, dissenting) (cleaned up).

But, just as "a President has no such power when it comes to the single Director of the CFPB, who serves a fixed five-year term[,]" *id.* at 190 (Kavanaugh, *J.*, dissenting), neither does a President have such power over the Chief Judge, as, on its own accord, "[t]he Tax Court shall at least biennially designate a judge to act as chief judge." 26 U.S.C. § 7444(b).

Nor is the Chief Judge of the Tax Court statutorily granted authority that would enable the Chief Judge to control and align the Tax Court with a President's policies. While authorized to "divide the Tax Court into divisions of one or more judges, assign the judges of the Tax Court thereto, and in case of a division of more than one judge, designate the chief thereof[,]" 26 U.S.C. § 7444(c), the Chief Judge is not, e.g., statutorily "granted budget, personnel, and agenda control." *PHH Corp.*, 881 F.3d at 189 (Kavanaugh, *J.*, dissenting), Rather, just like "the single-Director CFPB, with its fixed five-year Director term," the fifteen-year term held by each judge of this Court "causes a diminution of Presidential power greater than the diminution that occurs in traditional multi-member independent agencies." *Id.* (Kavanaugh, *J.*, dissenting); 26 U.S.C. § 7443(e) ("The term of office of any judge of the Tax Court shall expire 15 years after he takes office.").

25

Although the President's authority to appoint a chair is a significant power, it may not be sufficient on its own to render a for-cause removal restriction constitutional. In such instances,

> [t]here is more. In a multi-member agency, the commissioners or board members other than the chair serve staggered terms and are replaced by the President as their terms expire. A tradition has developed by which some commissioners or board members of the opposite party resign from independent agencies when a new President takes office. Even apart from that tradition, the staggered terms mean that a President will have ever-increasing influence (through appointments) over an independent agency during the course of that President's term. That does not occur with the single-Director CFPB.

*PHH Corp.*, *supra*, at 189 (Kavanaugh, *J.*, dissenting).

That does not occur with the Tax Court either. Alas, the fifteen years terms of Tax Court judges necessarily exceed any one President's maximum of eight years in office, and (except in the case of consecutive two-term Presidents where a Tax Court judge is appointed within the first year of the first President's term) a Tax Court judge is virtually guaranteed to serve over the course of at least three presidential administrations, with *at least* one President precluded from exercising removal without the explicit for-cause finding required under Section 7443(f) *for the entire term*. Every such President is, therefore, unable to appoint new, preferred Tax Court judges to align with the administration's goals.

26

Surely, that far exceeds the problem recognized by then-Judge Kavanaugh: "Until the Director's term expires, the new President has zero influence through appointment, and the zero remains zero until the Director's term expires." *Id.* (Kavanaugh, J., dissenting). Consequently, "[t]his case therefore involves a *substantial* additional diminution of Presidential authority beyond the diminution that occurs in a traditional independent agency." *Id.* at 191 (Kavanaugh, J., dissenting).

Tax Court judges exercise executive branch power in a manner untraceable to the President – "[a]fter all, from the moment an [official] is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear." *Collins*, 594 U.S. at 278 (Gorsuch, J., concurring in part) (cleaned up). "Tax Court judges neither exercise judicial power in the particular sense employed by Article III, nor legislative power under Article I. Because the Tax Court exercises its authority as part of the Executive Branch," *Crim*, 66 F.4th at 1000 (cleaned up), Section 7443(f) violates Article II's mandate that "the President [must] remain[] responsible for the exercise of executive power—[so that] through him, the exercise of executive power remains accountable to the people." *Arthrex*, 594 U.S. at 27.

\* \* \*

Underscoring the constitutional infirmity, "[a]lthough structural 'innovation' is not itself unconstitutional, a novel agency fights uphill: 'the lack of historical

27

precedent for an entity is perhaps the most telling indication of a severe constitutional problem.'" *PHH Corp.*, 881 F.3d at 144 (Henderson, *J.*, dissenting) (cleaned up, quoting *Mistretta v. United States*, 488 U.S. 361, 385 (1989) and *Free Enter. Fund*, 561 U.S. at 505). And that proposition holds true "[h]ere too: Perhaps the most telling indication of the severe constitutional problem with the [Tax Court] is the lack of historical precedent for this entity." *Id.* at 166 (Kavanaugh, *J.*, dissenting).

While the Tax Court's structure wholly forgoes any and all of the safeguards used in other multi-member executive bodies including for-cause restrictions on the President's removal powers, the historical anomalies extend even further. As Congress has declared that "[t]he Tax Court is not an agency of, and shall be independent of, the executive branch of the Government." 26 U.S.C. § 7441. But, even noting "the Supreme Court has cautioned that congressional pronouncements are not dispositive of the status of a governmental entity for purposes of separation of powers analysis under the Constitution," *Crim*, 66 F.4th at 1001 (cleaned up), the Tax Court's exercise of governmental power must still comply with the Constitution.

Accordingly, given that "the Tax Court exercises its authority as part of the Executive Branch[,]" *id.*, and that its "powers are, and have always been, executive... tax judges cannot be truly and fully 'independent' because 'lesser officers must remain accountable to the President, whose authority they wield.'" *Id.* at 1007 (Walker, *J.*,

dissenting) (quoting *Seila Law*, 591 U.S. at 213). Tax Court judges' virtually complete immunization from presidential oversight is "contrary to Article II's vesting of the executive power in the President. The President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Free Enter. Fund*, 561 U.S. at 484 (quoting U.S. Const. art. II, § 3).

Indeed, the Supreme Court recently explained that there are "only two exceptions to the President's unrestricted removal power" for exercise of executive power — independent agencies and inferior officers with narrowly defined duties. *Seila Law*, 591 U.S. at 204. Tax Court judges certainly are not inferior officers with narrowly defined duties (e.g., independent counsel).[5] And the Tax Court explicitly is not the other exception, i.e., it is not an agency — independent or otherwise — of the executive branch. 26 U.S.C. § 7441.

Such "structural innovation" imposes a more difficult burden, *PHH Corp.*, 881 F.3d at 144 (Henderson, *J.*, dissenting), to establish constitutionality and overcome "the most telling indication of the severe constitutional problem with the [Tax Court:] the lack of historical precedent for this entity." *Id.* at 166 (Kavanaugh, *J.*, dissenting).

---

[5] Tax Court judges are not inferior officers at all, as "[w]hether one is an 'inferior' officer depends on whether he has a superior other than the President. An inferior officer must be directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate." *Arthrex*, 594 U.S. at 13 (cleaned up).

The historical existence of the Tax Court itself – not similarly structured entities – cannot satisfy the criterion. *See McGirt v. Oklahoma*, 140 S. Ct. 2452, 2482 (2020) (unconstitutional "acts, performed long enough and with sufficient vigor, are never enough to amend the law. To hold otherwise would be to elevate the most brazen and longstanding injustices over the law, both rewarding wrong and failing those in the right.").

Accordingly, the for-cause limitation of 26 U.S.C. § 7443(f) must be stricken, the decision below vacated, and this cause remanded for further proceedings before a different Tax Court judge. *Accord Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251-52 (2018) (requiring new proceedings with a *different adjudicator* "[t]o cure the constitutional error").

## III. THE DECISION BELOW, DISMISSING ON STATUTE OF LIMITATIONS GROUNDS, WAS AN ERROR OF LAW, CONTRARY TO THE APPLICABLE PLEADING STANDARDS, RULES, AND THIS COURT'S PRIOR DECISION REVERSING AND REMANDING THIS CASE ON APPEAL.

Despite this Court's previous reversal and remand, directing the Tax Court to conduct further proceedings to determine whether equitable tolling applies to the facts of this case, the Tax Court held that, "[u]nder these circumstances, we conclude that this case shall be dismissed because the Petition was not timely filed pursuant to section 7623(b)(4)." JA-090. But that begs the question, *What circumstances?* The Government did not set forth any factual or legal rebuttal to Appellant's allegations

in the petition that alleged equitable factors compel the finding that his petition was untimely. *See* JA-020 ¶O. The Government did not reply to Appellant's opposition to its motion for judgment on the pleadings, nor oppose Appellant's motion for sanctions, and after the multi-year pendency, the Court denied Appellant's two motions for a status conference.

Rather, the Tax Court's *sua sponte* recharacterized the motion for judgment on the pleadings as a motion for failure to state a claim and dismissed on grounds different from the Government's own arguments, which were contrary to this Court's previous determinations. Ultimately, the Tax Court treated the motion to dismiss as a motion for summary judgment without applying the proper standard requiring the Government to satisfy its burden of proof to establish the SOL as an affirmative defense, failing to allow Appellant to rebut that burden (if satisfied), and reversing the requirement to construe *pro se* pleadings liberally and pleading in general to do justice. Each was a manifest error of law requiring reversal.

### A.    The Statute of Limitations is a Nonjurisdictional Affirmative Defense that is Subject to Waiver, Forfeiture, and Equitable Tolling.

After the Tax Court dismissed this case for purported lack of jurisdiction for Appellant's failure to meet the thirty-day deadline, on appeal, this Court "h[e]ld that § 7623(b)(4) is not jurisdictional," and that "the filing period in § 7623(b)(4) is subject to equitable tolling." *Myers*, 928 F.3d at 1036, 1037.

Similarly, because the SOL is "a nonjurisdictional claim-processing rule... *it therefore can be waived or forfeited by an opposing party.*" *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019) (emphasis added). *See also Smith-Haynie v. D.C.*, 155 F.3d 575, 579 (D.C. Cir. 1998) (with respect to "Title VII discrimination cases, the 90–day period is not a jurisdictional prerequisite to filing suit in federal district court but operates as a statute of limitations and is subject to waiver and equitable tolling.").

Furthermore,

[i]t is well established that a statute of limitations, like other affirmative defenses, generally may not be invoked by the court on its own motion. *See, e.g., United States v. Mitchell*, 518 F.3d 740, 748 (10th Cir. 2008) (noting that "all circuits to consider this issue have held so explicitly" and collecting cases). A strong justification for this rule is what courts have long identified as the primary purpose of nonjurisdictional statutes of limitations: to protect defendants against stale or unduly delayed claims.

*Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1109 (D.C. Cir. 2019) (cleaned up, quoting *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008). Indeed, "courts are constrained by the principle of party presentation, which is basic to our adversary system." *Id.* (cleaned up).

## B.   The Decision Below Failed to the Properly Apply the Pleading Standards and Tax Court Rules, which Compel the Conclusion that the Government Forfeited or Waived the Statute of Limitations as an Affirmative Defenses.

Under existing Tax Court rules and precedent, litigants forfeit or waive affirmative defenses (including SOL affirmative defenses) if improperly pleaded. Tax

Court Rule 39 (entitled, "Pleading Special Matters") *specifically* lists, *inter alia*, the SOL

as a matter that must be set forth in the pleadings, providing, in full:

> A party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the *statute of limitations*. A mere denial in a responsive pleading will not be sufficient to raise any such issue.

Tax Ct. R. 39 (emphasis added).

There is no doubt that Tax Court "Rule 39 requires that all affirmative defenses

be set forth in the pleadings." *Ford v. Comm'r*, T.C. Memo. 2005-18, 2005 WL 225287,

at *11 (2005). A party's failure to do so generally results in a forfeiture or waiver of

such defense. *See id.* (holding estoppel defense forfeited "[b]ecause petitioners have

failed properly to raise the issue of judicial or equitable estoppel.").

This principle holds true with respect to the SOL defense, as the Tax Court

itself has explained:

> The applicability of the limitations period is not a jurisdictional requirement that must be met for the Court to decide this case. The period of limitations is a rule of law that, unlike a jurisdictional requirement, *may be waived if it is not pleaded properly*. Our Rules require that a [party] specifically allege as an affirmative defense in the [pleadings] that the limitations period has run in order to properly raise the applicability of the limitations period as an issue. Petitioners acknowledge that they did not make such an allegation in the petition. We accordingly conclude that petitioners have waived any dispute that they now have as to the applicability of the [relevant] limitations period by not timely raising the issue.

*Bruce v. Comm'r*, T.C. Memo. 2014-178, 2014 WL 4336234, at *12 (2014), *aff'd*, 608

F. App'x 268 (5th Cir. 2015) (emphasis added, citations omitted).

> ### 1. The Government's Answer Did Not Properly Plead the SOL as an Affirmative Defense.

Under the applicable standards, the Government did not properly plead the

SOL as an affirmative defense. Indeed, neither of the terms "affirmative defense" or

"statute of limitations" are mentioned in the Answer, nor is the specific statutory

subsection that contains the applicable SOL. *See generally* Answer (never mentioning

26 U.S.C. § 7623(b)(4), which states, that a "determination regarding an award under

paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to

the Tax Court....").

Rather, in its Answer, the Government merely stated *its conclusions* regarding

the opinion of this Court on appeal and the now vacated opinion of the Tax Court

(*see* JA-078-079 ¶37(a)-(h)); Appellant identified each as a legal assertion (with no

requirement to respond), denied to the extent necessary, and stated his disagreement

regarding the Government's reading of the respective opinions. JA-083 ¶37(a)-(h). The

Government further asserted that "[b]ecause the petition was not timely filed,

petitioner fails to state a justiciable cause of action ..." (JA-079 ¶37(i)), which Petitioner

denied. JA-083 ¶37(i). But this Court's opinion foreclosed the notion that the case

*sub judice* is not a justiciable cause of action, holding a timely petition not to be required for this Court to exercise jurisdiction. *See Myers*, 928 F.3d at 1034-36.

And the Government's assertions were insufficient under the Tax Court's rules, as the Tax Court itself has repeatedly explained that "the statute of limitations is an affirmative defense, and *the party raising it must specifically plead it* and carry the burden of proof with respect thereto. Rules 39, 142(a)." *Fazi v. Comm'r*, 105 T.C. 436, 447 (1995) (cleaned up, emphasis added); *see also* Tax Ct. R. 39 ("A party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including ... the statute of limitations.").

But the Answer failed to include the words "affirmative defense" or "statute of limitations" or mention 26 U.S.C. § 7623(b)(4), or *even mention the 30 days specified in that subsection* at all. *See generally* JA-073-080. Relatedly, the motion for judgment on the pleadings failed to mention "statute of limitations" and used the term "affirmative defense" only with respect to Appellant's equitable tolling argument. *See generally* Doc. #74. Resultingly, Appellant was under no obligation to plead "equitable tolling[, which] permits a plaintiff to *avoid* the bar of the limitations period," *Smith-Haynie*, 155 F.3d at 579 (cleaned up, emphasis added).

This Court has previously considered whether a boilerplate pleading sufficiently raised the SOL defense "under the liberal notice pleading requirements of

the Federal Rules of Civil Procedure." *Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442, 448 (D.C. Cir. 1994) (Wald, *J.*, dissenting in part). Despite the party's failure to identify a specific statute as providing the applicable SOL, the court found the SOL defense sufficiently pleaded where the "answer to [the] complaint stated that 'Plaintiff's claims are barred by the applicable statute of limitations.'" *Long v. Howard Univ.*, 550 F.3d 21, 24 (D.C. Cir. 2008). This Court explained, regarding Fed. R. Civ. P. 8, "[u]nder our precedents, that pleading sufficed to preserve the University's statute-of-limitations defense for trial." *Id.* (citing *Daingerfield, supra*).

At a minimum, under the Federal Rules, like the Tax Court Rules a party "must affirmatively state any avoidance or affirmative defense," Fed. R. Civ. P. 8(c)(1), and must *affirmatively plead the SOL in order to properly raise the issue for a court's consideration*, even though the "failure to cite in its answer any specific statute of limitations might be forgiven[.]" *Daingerfield*, 40 F.3d at 448 (Wald, *J.*, dissenting in part).

Here, the Answer failed to satisfy the requirement "that affirmative defenses *be pleaded*." *Id.* at 445. The Government failed to mention, thus failed to properly plead, the SOL as an affirmative defense; rather asserting, "[b]ecause the petition was not timely filed, petitioner fails to state a justiciable cause of action and otherwise does not meet the statutory conditions for relief under 26 U.S.C. § 7623." JA-079 ¶37(i). That was insufficient to raise the SOL as an affirmative defense.

36

The Government's assertion is two-part:

*First*, that "[b]ecause the petition was not timely filed, petitioner fails to state a justiciable cause of action[,]" which is demonstrably false under this Court's prior decision on appeal. The Government's pleading asserts the cause is not within Tax Court's power to remedy (i.e., not justiciable):

> a justiciable controversy as distinguished from a difference or dispute of a hypothetical or abstract character must be definite and concrete, touching the legal relations of parties having adverse legal interests, and must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character.

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242 (1952) (cleaned up). Forsooth, in remanding this case for further proceedings, *Myers,* 928 F.3d at 1037, this Court indisputably confirmed this to be a justiciable case.

 *Second*, that Appellant "otherwise does not meet the statutory conditions for relief under 26 U.S.C. § 7623." JA-079 ¶37(i). The Government did not point to any specific statutory condition for relief, nor any related factual assertions in support, and failed to affirmatively plead any SOL defense.

Petitioner appropriately denied the Government's assertions in full. *See* JA-083 ¶37(i) ("Denied.").

Appellant's replies were fully appropriate to rebut the Government's assertions, which failed to properly plead the SOL as an affirmative defense, as the Tax Court

37

and its "Rules require that a [Respondent] *specifically allege as an affirmative defense* in the [pleadings] that the limitations period has run in order to properly raise the applicability of the limitations period as an issue." *Bruce*, 2014 WL 4336234, at *12.

Another decision is instructive, where the Tax Court addressed a situation where a taxpayer had an obligation to affirmatively plead the SOL:

> In his opening brief, petitioner states: "Respondent apparently contends as an affirmative defense that the statute remains open". Respondent is not raising an affirmative defense and thus the burden is not on respondent to plead it. Petitioner appearently [sic] made this argument in an effort to side-step the fact that he failed to plead the statute of limitations as an affirmative defense, and it is without merit.

*Ho Ching Cheng v. Comm'r*, T.C. Memo. 2006-74, 2006 WL 954991, at *5 n. 4 (T.C. 2006).

Here, Appellant was not raising an affirmative defense; rather, the Government had the obligation to properly plead the SOL in its Answer but failed to do so and, correspondingly, failed to shift the burden to Appellant to plead equitable tolling in response. Accordingly, Appellant did not forfeit any avoidances that would allow for an exception to any affirmative defense and was under no obligation to plead any avoidances, despite that he properly (albeit unnecessarily) pleaded estoppel.

However, the Government's "failure to timely raise the statute of limitations amounts to a waiver of this affirmative defense." *Id.* at *5.

38

2.    **The Government's Pleading Improperly Conflated Issues and Conflicted with this Court's Precedent in the Prior Appeal.**

In addition to the Government's failure to properly plead the SOL under Tax Court Rule 39, the Answer fails to separately state the allegations, running afoul of Tax Court Rule 32(b), which states in full:

> All averments of claim or defense, and all statements in support thereof, shall be made in separately designated paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single item or a single set of circumstances. Such paragraph may be referred to by that designation in all succeeding pleadings. Each claim and defense shall be stated separately whenever a separation facilitates the clear presentation of the matters set forth.

To be clear, not only did the Government fail to mention the SOL in its Answer, but it grouped its assertions that this case is non-justiciable and that Appellant failed to satisfy the statutory conditions for relief. JA-079 ¶37(i). Neither assertion standing alone, nor the assertions standing together, properly raise the issue of the SOL as an affirmative defense. Accordingly, it violated Tax Court Rule 32 and was properly denied in full. JA-083 ¶37(i).

Indeed, even a cursory analysis of the Government's Answer illustrates that its allegations are wrong as a matter of law under this Court's decision in the prior appeal: The Government contended that, in the prior appeal, this Court "affirmed the Tax Court's holding that the petition was not timely" and that, "[b]ecause the petition was *not timely filed, petitioner fails to state a justiciable cause of action* and otherwise does not

meet the statutory conditions for relief under 26 U.S.C. § 7623." JA-079 (emphasis added, citing *Myers*, 928 F.3d at 1032).

Indisputably, the following assertion results: *Because this Court held the petition was not timely, petitioner fails to state a justiciable cause of action.*

But that assertion is logically irreconcilable with this Court's decision "revers[ing] the Tax Court's dismissal and remand[ing] this case for further proceedings because, although Myers's petition was untimely, the filing period is not jurisdictional and is subject to equitable tolling." *Myers*, 928 F.3d at 1027.

Accordingly, the assertion in the Answer that Appellant's untimely petition rendered this a non-justiciable case was wrong, did not properly plead the SOL, and was properly denied. And the bundled assertion that Appellant otherwise did not meet the criteria for relief (failing to assert any particular criteria) was properly denied.

Consequently, the decision below was wrong as a matter of law and must be reversed.

**C.    The Decision Below Failed to Require the Government to Carry its Burden of Proof to Establish the Statute of Limitations as an Affirmative Defense, Applied the Wrong Standard of Review, and Failed to Construe the Pleading to Do Justice.**

The Tax Court has "explained the mechanics of how the burden of going forward with the evidence works and when it shifts" in discussing the SOL:

> The bar of the statute of limitations is an affirmative defense, and *the party raising it must specifically plead it and carry the burden of proof with respect thereto.* Rules 39, 142(a).... [If and after] such party has established a prima facie case[, then] the burden of going forward with the evidence shifts to the other side, and the other party has the burden of introducing evidence to show that the bar of the statute is not applicable. Where the other party makes such a showing, *the burden of going forward with the evidence then shifts back to the party pleading the statute, to show that the alleged exception is invalid or otherwise not applicable.* The burden or [sic] proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations.

*Fazi*, 105 T.C. at 447 (cleaned up, emphasis added, quoting *Adler v. Commissioner*, 85 T.C. 535, 540 (1985)); *see also* Tax Ct. R. 142(a)(1) (emphasis added) ("in respect of any new matter, increases in deficiency, and *affirmative defenses, pleaded in the answer*, [the burden of proof] shall be upon the respondent.").

The Tax Court impliedly found that the Government met its burden and, relatedly, that Appellant (was afforded and) failed to rebut it:

> Throughout the proceedings in this Court, respondent has consistently raised the issue of the untimeliness of the Petition as a bar to relief in this case.... Respondent has presented substantially more than mere boilerplate language in this case alleging that the untimeliness of the Petition bars relief for petitioner. We therefore conclude that respondent has not waived the affirmative defense relating to the untimeliness of the Petition.

JA-090.

41

Moreover, the Tax Court stated that, "[f]urthermore, notwithstanding any issue of potential waiver, the D.C. Circuit in *Myers II* specifically directed this Court to decide whether equitable tolling applies in this case." JA-090.

But notwithstanding that the Tax Court construed the Government's pleading liberally, it refused to do so for Appellant – despite that the petition was filed *pro se* and Appellant's *pro se* supplemental response set forth various arguments in favor of equitable tolling, the Tax Court concluded:

> Petitioner has offered no explanation for the untimeliness of his Petition nor alleged any facts to support his entitlement to equitable tolling, despite several opportunities to do so since *Myers II* was issued. Under these circumstances, we conclude that this case shall be dismissed because the Petition was not timely filed pursuant to section 7623(b)(4).

JA-090.

But, unmentioned in the Tax Court's decision, Appellant preemptively pleaded estoppel: "The IRS has concealed the true facts of my worker status to this day and I pray to the court to grant me the Affirmative defense of Estoppel to estopp [sic] any motion by the IRS to dismiss my case due to the expiration of the statute of limitations, or for lack of jurisdiction, or for any reason." JA-020 ¶O.

The Tax Court's error of law was pellucid – it liberally construed the Government's pleading, while failing to do so for Appellant's *pro se* petition (which preemptively pleaded equitable estoppel) – and also improperly held that the

42

Government had satisfied its *burden of proof* to establish the SOL as an affirmative defense (i.e., the summary judgment standard), while assuming that Appellant was required, afforded the opportunity, and failed to rebut it. But that was not the proper standard to apply and far exceeded the required analysis of the sufficiency of the pleadings alone.

Instead, the proper standard to apply is that

[a] complaint should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. Furthermore, a court must accept as true all factual allegations in the complaint.

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (cleaned up, quoting, *inter alia*, *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). *See also, e.g.*, *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (cleaned up) ("We construe the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor. Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

But the decision below undeniably failed to view Appellant's petition in the most favorable light – it failed to mention that he pleaded equitable estoppel preemptively, or that the Government's response was merely, "denies." JA-075 ¶14. Indeed, while it showed contortionist-like flexibility liberally construing the Government's answer, motion for judgment on the pleadings, and applicable burden of proof, it failed to whatsoever for Appellant in violation of long settled Supreme Court jurisprudence.

The Tax Court's

> departure from the liberal pleading standards... is even more pronounced in this particular case because petitioner ha[d] been proceeding, from the litigation's outset, without counsel. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.

*Erickson*, 551 U.S. at 94 (cleaned up); *see also id.* (quoting prior Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

This pellucidly violated the Tax Court's own rules, which mirror those of the Federal Rules of Civil Procedure. *See* Tax Ct. R. 31(d) ("A pleading must be construed so as to do justice."). Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). There can be no genuine suggestion otherwise, the Tax Court failed to do so for Appellant's pleadings. Indeed, even when a litigant pleads one particular

44

affirmative defense or avoidance, courts must construe the appropriate form despite an incorrect label, as illustrated by this Court:

> Bull argues that the Commissioner should be equitably estopped from denying that the registration runs from 1972 to 1992. We have cautioned that, assuming estoppel applies against the government, we think it fair to add that, despite the doctrine's flexibility in disputes between private parties, its application to the government must be rigid and sparing. We need not consider whether Bull might be able to estop the Commissioner from denying that he granted a 1972–1992 renewal, however, because, as detailed below, Bull's claim is more appropriately analyzed as a claim for equitable *tolling*....

> Unlike classic equitable estoppel, the related principle of equitable tolling implicates no particular sensitivities where the government is a party to the proceedings. To the contrary, equitable *tolling* principles apply against the government on a par with private parties.

*Bull S.A. v. Comer*, 55 F.3d 678, 680–81 (D.C. Cir. 1995) (cleaned up, emphasis in original).

Construing Appellant's *pro se* petition to do justice would have included considering his equitable estoppel claim as one for equitable tolling.[6] *See, e.g., id.* at, 681 ("With these principles in mind, we conclude that Bull's claim is correctly analyzed as a claim for equitable tolling rather than classic equitable estoppel"). In

---

[6] Which even can confuse lawyers, judges, *and justices*. *See Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) ("Both equitable estoppel and equitable tolling operate, in a practical sense, to toll a limitations period. Although the Supreme Court and our court have occasionally conflated the two doctrines....").

stark contrast, the Tax Court acted as if it was never mentioned.[7] Doing so abrogated the required analysis of the *pleadings* and assumed that Appellant was required to have pleaded *and proven* equitable tolling despite no motion for summary judgment filed by the Government triggering his burden to do so. Rather, Appellant was merely required to adequately plead – not prove – equitable tolling (at most, given the lack of specificity to raise the SOL as an affirmative defense in the Answer). And the question for the Tax Court was only whether "it appears beyond doubt that [Appellant] can prove no set of facts in support of his claim ... [i.e.,] merely to assess the legal feasibility of the [Petition], not to assay the weight of the evidence which might be offered in support thereof." *Off. Comm. of Unsecured Creditors of Color Tile*, 322 F.3d at 158. The Tax Court made no mention of Appellant's claims in his pleadings, nor whether – at the appropriate time – it was clear that no set of facts could prove his entitlement to equitable tolling. And, importantly, but unconsidered below, "[t]urning to the standards for equitable tolling, a wide array of equitable principles can support the tolling of a statutory deadline[.]" *Bull*, 55 F.3d at 681.

Rather, Appellant was not required to have proven entitlement to tolling at the then-present state of the litigation. And. As explained by the Ninth Circuit: "In this

---

[7] Despite that Appellant even labeled each page, "PETITION FOR WHISTLEBLOWER ACTION UNDER CODE SECTION 7623(B)(4) AND THE AFFIRMATIVE DEFENSE OF ESTOPPEL." *See* JA-019-021.

case, the allegations of the [Petition] alone will *not* properly yield a conclusion that equitable tolling does not apply.... The sole issue is whether the [Petition], liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the *potential* applicability of the equitable tolling doctrine." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993) (emphasis in original).

In any event, and of ultimate consequence here – even in response to Appellant's pleading of equitable estoppel *explicitly to avoid a possible SOL defense*, JA-020 ¶O, the Government never mentioned the words "statute of limitations" in the Answer. Rather, in response to *Appellant's explicit pleading* of estoppel against a *potential* SOL defense, the Government merely answered, "Par. O: denies." JA-075 ¶ 14. Even faced with Appellant's spotlight on the SOL, the Government failed to "set forth in the [Answer]" the affirmative defense of the SOL, and *explicitly* under the Tax Court Rules, "[its] mere denial in a responsive pleading [can] not be sufficient to raise any such issue." Tax Ct. R. 39. To the extent the Government's response was sufficient to plead the SOL, it necessarily follows that Appellant's petition was adequate to plead equitable tolling.

But the Tax Court failed to apply the proper legal standard and improperly dismissed based on (an incorrect analysis of) the pleadings. *Accord Cervantes*, 5 F.3d at 1276 (footnote omitted, emphasis added) (the "test for equitable tolling requires a

47

*practical* inquiry. At a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstance.... Thus, the question ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion, where review is limited to the complaint alone.").

The Tax Court's errors cannot be overlooked as they directly inured to Appellant's immense prejudice, who was not yet (if ever) required to establish facts to support his equitable tolling argument and will forever be prevented the opportunity if the decision below stands. Rather, the Tax Court's failure to uphold the pleading standards, Tax Court Rules, and duty to construe Appellant's *pro se* filings liberally flipped the proper analysis on its head and requires correction from this Court.

## CONCLUSION

For the foregoing reasons, the decision below should be reversed and the case remanded for further proceedings. If this Court finds that the Government failed to adequately plead the SOL, the proceedings should determine whether Appellant is entitled to relief. Alternatively, if the Court determines that the SOL and equitable tolling were adequately pleaded, the proceedings should determine whether equitable tolling applies to the circumstances in this case, as the Court previously ordered on appeal.

Furthermore, the Court should hold the for-cause limitation on the President's removal authority unconstitutional and strike it from Section 7443, and order Appellant's proceedings on remand to be adjudicated by a different Tax Court judge following the constitutional remedy.


Respectfully Submitted,                    December 5, 2024

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III
D.C. Cir. Bar No. 56145
MARGULIS GELFAND DIRUZZO & LAMBSON
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
954.615.1676 (o)
954.827.0340 (f)
jd@margulisgelfand.com

/s/ Daniel M. Lader
Daniel M. Lader
D.C. Cir. Bar No. 62820
MARGULIS GELFAND DIRUZZO & LAMBSON
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
954.615.1676 (o)
954.827.0340 (f)
dan@margulisgelfand.com


*Pro Bono Counsel for the Appellant*

## CERTIFICATION OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C)(i) counsel certifies that this brief is in compliance with the 13,000 type-volume limitation of Rule 32(a)(7)(B)(i). The instant brief is 11,762 words in length. The brief has been prepared using Microsoft Word, Goudy Old Style font in 14 point.

/s/ Daniel M. Lader
Daniel M. Lader

## CERTIFICATE OF SERVICE

This is to certify that a copy of the corrected opening brief was served on counsel for the appellee, Bethany B. Hauser, by filing it with the CM/ECF system on December 5, 2024, of which she is a member. All counsel in the case are members of the CM/ECF system. Pursuant to Circuit Rule 31 eight paper copies of the Appellant's opening brief will be provided to the Court.

Pursuant to Circuit Rule 30 the Joint Appendix was filed on December 4, 2024, with the Clerk of Court via CM/ECF and seven paper copies of the Joint Appendix will be provided to the Court; a paper copy of the Joint Appendix together with a paper copy of the Appellant's opening brief will be provided to counsel for the appellee via USPS priority mail:

Bethany B. Hauser
U.S. Dept. of Justice, Tax Division, Appellate Section
Post Office Box 502
Washington, D.C. 20044
Bethany.B.Hauser@usdoj.gov

/s/ Daniel M. Lader
Daniel M. Lader